IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| TODD WILLSON and PEGGY LEMLEY on behalf of The United States of America and on behalf of the State of Iowa<br><br>Plaintiff/Relator,<br>v.<br><br>AARON BLASS, LEANN SOU, and LIFEPOINT DENTAL GROUP, LLC d/b/a LIFEPOINT DENTAL PARTNERS<br><br>Defendants | CASE NO. 16-cv-49-EJM<br><br><br>**AMENDED COMPLAINT** |

COME NOW, Relators Todd G. Willson and Peggy Lemley who bring this qui tam action in the name of the United States of America and of the State of Iowa, by and through their undersigned attorneys, and state as follows:

**INTRODUCTION**

1. This is an action by qui tam Relators Todd G. Willson (Willson) and Peggy Lemley (Lemley), on behalf of the United States, and the State of Iowa against Lifepoint Dental Group, LLC d/b/a Lifepoint Dental Partners (Lifepoint) and Defendants Aaron Blass (Blass) and Leann Sou (Sou) to recover penalties and damages arising from false statements Defendants made regarding the accuracy and reliability of its billing for services in an effort to secure federal monies allocated to the states pursuant to Medicaid.

2. Relator Willson worked first as a Financial Controller, and later as the Chief Financial Officer for Lifepoint from June 3, 2013 through June 5, 2014. As such, Relator Willson was privy to intimate details concerning the operation of Lifepoint and its billing practices.

1

3. Relator Lemley worked as a Financial Coordinator. Her duties included submitting charges for dental services, as provided to her by Lifepoint staff at its various dental locations, to insurance carriers, including Medicaid, for payment. As such, Relator Lemley was privy to intimate details concerning Lifepoint's billing practices.

**PARTIES**

4. Relator Willson is, and at all material times hereto, was a resident of Warren County, Iowa and a Citizen of the State of Iowa.

5. Relator Lemley is, and at all material times hereto, was a resident of Polk County, Iowa and a Citizen of the State of Iowa.

6. Lifepoint Dental Group, LLC d/b/a Lifepoint Dental Partners is an Iowa Limited Liability Company licensed to do business in Iowa, whose registered agent is David L. Wetsch, and whose principal place of business is in Polk County, Iowa.

7. Upon information and belief, Defendant Aaron Blass is, and at all material times hereto, was a resident of Polk County, Iowa and a Citizen of the State of Iowa.

8. At all times relevant hereto, Defendant Aaron Blass was and currently is the President and C.E.O. of Lifepoint.

9. Upon information and belief, Defendant Leann Sou is, and at all material times hereto, was a resident of Polk County, Iowa and a Citizen of the State of Iowa.

10. At all times relevant hereto, Defendant Leann Sou was the Vice President of Operations of Lifepoint.

**JURISDICTION & VENUE**

11. This action arises under the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* and the Iowa False Claims Act, Iowa Code § 685 *et seq.*

12. This Court maintains subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) (False Claims Act), 28 U.S.C. § 1331 (Federal Question), and 28 U.S.C. § 1367 (Supplemental Jurisdiction).

13. Venue is proper in this Court pursuant to 31 U.S.C. § 3732(a) because (i) Defendants reside in this district; (ii) Defendants transact business in this district and did so at all times relevant to this complaint; and, as alleged below; (iii) Defendant committed acts proscribed by 28 U.S.C. § 3729 – acts giving rise to this action – within this district.

14. This complaint together with a written disclosure statement setting forth and enclosing all material evidence and information Relators possess, pursuant to the requirements of 31 U.S.C. § 3730(b)(2), has been served upon the United States. Pursuant to the requirements of Iowa Code § 685.3 such written disclosure was also served upon the State of Iowa.

15. Relators Willson and Lemley have complied with all other conditions precedent to bringing this action.

16. Relators Willson and Lemley are the original source of, and have direct and independent knowledge of, any disclosed information on which any allegations herein might be deemed based, and have voluntarily provided such information to the Government before filing this action. Specific disclosures are provided in Willson and Lemley's affidavits of personal knowledge, which are attached as exhibits to this complaint. Such specific disclosures are hereby incorporated into this complaint.

**MATERIAL FACTS**

17. Enacted in 1965 through amendments to the Social Security Act, Medicaid is a health and long-term care coverage program that is jointly financed by states and the federal

government that serves persons of all ages whose income and resources are insufficient to pay for health care. Medicaid is the largest source of funding for medical and health-related services for people with low income in the United States. Medicaid is funded by both the United States and the State of Iowa.

18. Each state establishes and administers its own Medicaid program and determines the type, amount, duration, and scope of services covered within broad federal guidelines. States must cover certain mandatory benefits and may choose to provide other optional benefits.

19. The State of Iowa provides Medicaid coverage, and thus makes payments, for certain dental procedures as described herein.

20. Defendant Lifepoint purportedly accepted Medicaid monies in return for its dental services, from its offices located in the following Iowa counties: Polk County, Marshall County, Linn County, and Story County.

21. Defendant Lifepoint is a holding company for five (5) dental offices, and provides on-site business support, best practice standard operating procedures, and centralized consolidation and analysis of financial performance.

22. Until December 2015, Lifepoint was a holding company for six (6) dental offices, but the Marshalltown office closed in December 2015.

23. Through its five (5) offices, Lifepoint has provided dental services to hundreds of individuals through its five (5) office locations.

24. During times relevant to this lawsuit, Lifepoint had six (6) locations: West Des Moines, Des Moines, and Ankeny, in Polk County; Marshalltown, in Marshall County; Cedar Rapids, in Linn County; and Ames, in Story County.

25. Only certain of those locations are approved to accept Medicaid patients.

26. On June 3, 2013, Relator Willson was hired by Lifepoint as the company's Financial Controller on a 90 day probationary period. Later in November 2013, Relator Willson was promoted to Chief Financial Officer ("CFO").

27. In December 2013, Relator Willson was given a $10,000 raise, bringing his salary from $65,000 to $75,000 per year.

28. Thereafter, there were discussions as to an appropriate bonus structure.

29. During this time, Relator Willson's performance was consistently rated highly, and he was told that he was doing an excellent job and that he was integral in Lifepoint's business growth.

30. As of May 1, 2014, Relator Willson had three (3) employees who reported directly to him:
    a. Sandy Gaul
    b. Jessica Letvin
    c. Peggy Lemley

31. Each office submitted their own Medicaid billings for services rendered at each office for those patients who qualified for Medicaid.

32. Medicaid charges could be entered either by each individual office, or by the Vice President of Operations of Lifepoint Dental Group, LLC, Defendant Leann Sou.

33. Each office location, and each person, such as office manager, CEO, CFO, VP, Financial Coordinator had their own unique username and password login for Lifepoint's cloud-computing based billing software, Denticon.

34. The Vice President of Operations Leann Sou had access to each office's login information, and could enter charges at each location.

35. With the knowledge and consent of Defendant Blass and Defendant Sou, Defendant Lifepoint would bill dental services to Medicaid, ostensibly for services rendered at each location.

36. During their tenure at Lifepoint, Relators Willson and Lemley became aware of multiple instances of fraud, including submitting false claims to Medicaid, which revealed a culture of dishonesty and fraudulent billing practices within Lifepoint and with the knowledge and approval by Defendants Blass and Sou.

37. Upon the Relators information and belief, Lifepoint would, on occasion, submit Medicaid claims out of Lifepoint's *approved* Medicaid offices even when certain Medicaid patients were seen at *non-Medicaid-approved* Lifepoint offices.

38. More specific instances of fraud were uncovered in Spring/Summer 2014. On May 1, 2014, Relator Lemley brought to Relator Willson's attention several questionable billings to Medicaid and other insurance companies that had been entered by Defendant Sou, the previous day, April 30, 2014.

39. Upon further review, Relator Willson found multiple instances where charges had been billed to Medicaid and other insurance companies for which no services had been provided. He also found that Defendant Sou had made questionable purchases.

40. These erroneous charges and purchases resulted in the revenue being artificially inflated, which in turn resulted in Defendant Sou meeting her monthly revenue target, making her eligible for a bonus. Upon information and belief, Defendant Sou did receive a $500

bonus for at least the month of April 2014, based on these erroneous charges and purchases.

41. On May 5, 2014, Relator Willson sent six (6) consecutive emails to Defendant Blass, notifying Defendant Blass of the discrepancies Relator Willson had discovered. Relator Willson included copies of the questionable charges and inflated revenue entries in these emails. Due to HIPAA concerns, Relator Willson did not retain hard copies of these emails.

42. In these emails, Relator Willson warned Defendant Blass that fraudulent charges and purchases had been made and that some of these were made by Defendant Sou.

43. Defendant Blass did not send a reply to these emails, but did enter Relator Willson's office and informed Relator Willson that he would fix any illegitimate charges.

44. In a later email, Defendant Blass instructed Relator Willson to set up a meeting with CEDR HR Solutions.

45. On May 6, 2014, Defendant Blass approached Relator Willson after finishing a brief conversation with Defendant Sou and Brad Richtsmeier (an owner and dentist), and informed Relator Willson that the "matter had been resolved with the VP [of Operations Defendant Leann Sou], everything is fine, so just drop it."

46. During this conversation, Defendant Blass also instructed Relator Willson to cancel his meeting with CEDR HR Solutions.

47. Immediately following this conversation, Relator Willson checked some of the above-described billing entries in Denticon, and learned that some illegitimate entries had been deleted.

48. On May 8, 2014, Defendant Blass issued an email stating that Relator Willson's three reporting employees, Sandy Gaul, Jessica Letvin, and Relator Lemley, would henceforth report to the VP of Operations, Defendant Sou, and that further restructuring would follow.

49. Neither Defendant Blass, Defendant Sou, nor anyone else consulted Relator Willson before this organizational change was made.

50. Relator Willson approached Defendant Blass, and asked why the above decision was made. Defendant Blass responded that the change "made more sense organizationally" and that the move would "free [Relator Willson] up to spend more time looking at ways to grow the business."

51. At this time, Relator Willson became concerned and considered the restructuring decision as retaliating against him for reporting on the false billing entries and purchases entered by Defendant Sou.

52. On June 5, 2014, Defendant Blass entered Relator Willson's office highly agitated, and accused Relator Willson of failing to identify instances of fraud and embezzlement out of the Marshalltown office totaling approximately $70,000, and informed Relator Willson that he was fired.

53. Relator Willson asked Defendant Blass what had prompted Defendant Blass to make this accusation. Defendant Blass replied that the Defendant Sou had found instances of fraud in the Care Credit system within the Denticon system at the Marshalltown office location as well as fraud within the daily cash, check, and deposit reconciliations for that location.

54. Upon information and belief, this discovery by Defendant Sou allegedly occurred after business hours near 9:00 p.m. on June 4, 2014.

55. The Care Credit system is exclusively used by the Office Manager in each of Lifepoint Dental Group, LLC office locations. Office Managers were also in charge of balancing cash, check, and daily deposits as well.

56. Each Office Manager reported directly to Defendant Sou, who routinely travels to each location to oversee each office location's daily business activities.

57. Care Credit is used to create in-house financing for patients.

58. Each Office Manager was responsible for managing the Care Credit system in his or her office and would report to Defendant Sou.

59. The Office Manager for the Marshalltown office was Megan Weitl.

60. Ms. Weitl and Defendant Sou were responsible for identifying any fraud and/or embezzlement out of the Marshalltown office.

61. Upon information and belief, the fraud and/or embezzlement out of the Marshalltown office was much less than $70,000.

62. Upon information and belief, Ms. Weitl paid approximately $7,000 to Lifepoint prior to her being terminated from Lifepoint.

63. Defendant Blass gave no verbal or written warnings to Relator Willson before firing him.

64. Nor was Relator Willson ever told or given any indication his performance was deficient.

65. Relator Willson was terminated for his efforts to investigate, call attention to and prevent Defendants from continuing to engage in fraudulent activity, including making false claims to Medicaid. Upon information and belief, Defendant Blass and Defendant Sou were the decision makers involved in the fraudulent activity described herein.

66. Relator Willson informed Iowa Medicaid of his concerns regarding fraudulent activity by Defendant Lifepoint on June 6, 2014.

9

67. After making his report, Relator Willson was interviewed by Ryan Dostal with Iowa Medicaid.

68. Relator Lemley continued complaining of fraudulent practices after Relator Willson's termination through December 2015.

69. Relator Lemley was terminated on January 6, 2016, for her efforts to investigate, call attention to and prevent Defendants from continuing to engage in fraudulent activity, including making false claims to Medicaid.

70. During Relator Willson's and Relator Lemley's tenures with Defendant Lifepoint, they acquired firsthand knowledge of the false claims and fraudulent activity described herein. Each described act or omission was knowingly committed by Defendants in an attempt to secure federal funds through billing for services that had not been provided to the extent claimed, if at all.

71. Likewise, one may reasonably infer that as Defendants billed the government for similar and related services. Discovery of other requests for payment unquestionably would reveal numerous similar (if not identical) fraudulent activity and additional misstatements in Defendants' attempts to receive funds they were not entitled to.

## COUNT I
### Violations of the Federal False Claims Acts

72. Relators Willson and Lemley incorporate the above paragraphs as if set forth fully herein.

73. As described in this Qui Tam Complaint, Defendants, individually, and by and through their officers, agents, and employees: (i) knowingly presented, or caused to be presented, to the United States Government, a false or fraudulent claim for payment or approval; (ii) knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the federal Government; and (iii)

10

knowingly made, used, or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the federal Government.

74. Defendants authorized and ratified the violations of the federal False Claims Act committed by their various officers, agents, and employees.

75. The United States Government and the public have been damaged as a result of Defendants' violations of the federal False Claims Act.

76. Relators were terminated by Defendants in violation of 31 U.S.C. § 3730(h), and have been damaged as a result of the unlawful termination.

**WHEREFORE**, Relators Todd G. Willson and Peggy Lemley, on behalf of themselves and the United States Government, pray:

(i) that this Court enter a judgment against Defendants in an amount equal to three times the amount of damages the United States and the State of Iowa have sustained as a result of Defendants' violations of the False Claims Act;

(ii) that this Court enter a judgment against Defendants for a civil penalty of $10,000 for each of Defendant's violations of the False Claims Act;

(iii) that Relators Todd G. Willson and Peggy Lemley recover all costs of this action, with interest, including the cost to the United States Government and the State of Iowa for its expenses related to this action;

(iv) that Relators Todd G. Willson and Peggy Lemley be awarded all reasonable attorneys' fees in bringing this action;

(v) that in the event the United States Government and/or the State of Iowa proceeds with this action, Relators Todd G. Willson and Peggy Lemley be awarded an amount for bringing this action of at least 15% but not more than 25% of the proceeds of the action;

(vi) that in the event the United States Government and the State of Iowa do not proceed with this action, Relators Todd G. Willson and Peggy Lemley be awarded an amount for bringing this action of at least 25% but not more than 30% of the proceeds of the action;

(vii) that Relators Todd G. Willson and Peggy Lemley be awarded prejudgment interest;

(viii) that a trial by jury be held on all issues so triable; and

(ix) that Relators Todd G. Willson and Peggy Lemley, the United States of America, and the State of Iowa receive all relief to which either or both may be entitled at law or in equity.

## COUNT II
### Violations of the Iowa False Claims Act

77. Relators Willson and Lemley incorporate the above paragraphs as if set forth fully herein.

78. As described in this Qui Tam Complaint, Defendants, individually, and by and through their officers, agents, and employees: (i) knowingly presented, or caused to be presented, to the State of Iowa, a false or fraudulent claim for payment or approval; (ii) knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State Government; and (iii) knowingly made, used, or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State Government.

79. Defendants authorized and ratified the violations of the state False Claims Act committed by their various officers, agents, and employees.

80. The State of Iowa and the public have been damaged as a result of Defendants' violations of the Iowa False Claims Act.

81. Relators were terminated by Defendants in violation of public policy under Iowa law and have been damaged as a result of the unlawful termination.

82. Pursuant to Iowa False Claims Act, Iowa Code § 685 *et seq.*, Relators Todd G. Willson and Peggy Lemley are Qui Tam Plaintiffs.

83. As such, Qui Tam Plaintiff Willson and Lemley assert the above allegations as they relate to violations listed in Iowa Code § 685.2 and otherwise set forth in Iowa law.

**WHEREFORE**, Relators Todd G. Willson and Peggy Lemley, on behalf of themselves and the State of Iowa, pray:

(i) that this Court enter a judgment against Defendants in an amount equal to three times the amount of damages the United States and the State of Iowa have sustained as a result of Defendants' violations of the False Claims Act;

(ii) that this Court enter a judgment against Defendants for a civil penalty of $10,000 for each of Defendant's violations of the False Claims Act;

(iii) that Relators Todd G. Willson and Peggy Lemley recover all costs of this action, with interest, including the cost to the United States Government and the State of Iowa for its expenses related to this action;

(iv) that Relators Todd G. Willson and Peggy Lemley be awarded all reasonable attorneys' fees in bringing this action;

(v) that in the event the United States Government and/or the State of Iowa proceeds with this action, Relators Todd G. Willson and Peggy Lemley be awarded an amount for bringing this action of at least 15% but not more than 25% of the proceeds of the action;

(vi) that in the event the United States Government and the State of Iowa do not proceed with this action, Relators Todd G. Willson and Peggy Lemley be awarded an amount for bringing this action of at least 25% but not more than 30% of the proceeds of the action;

(vii) that Relators Todd G. Willson and Peggy Lemley be awarded prejudgment interest;

(viii) that a trial by jury be held on all issues so triable; and

(ix) that Relators Todd G. Willson and Peggy Lemley, the United States of America, and the State of Iowa receive all relief to which either or both may be entitled at law or in equity.

## COUNT III
### Wrongful Termination
### (Willson v. Defendants Lifepoint, LLC and Aaron Blass)

84. Relator Willson incorporates the above paragraphs as if set forth fully herein.

85. On June 5, 2014, Relator Willson was terminated from Defendant Lifepoint.

86. Defendant Blass gave no verbal or written warning to Relator Willson before firing him.

87. Submitting false and fraudulent claims to Medicare and Medicaid is against the public policy of Iowa.

88. Relator Willson was engaged in protected activity by reporting fraudulent activity to his supervisor at Lifepoint, Defendant Blass.

89. As a proximate cause of Defendants' illegal conduct, Willson was damaged.

90. This retaliatory action was in violation of 31 U.S.C. § 3730(h) and Iowa state law.

91. Defendants acted with malice and/or reckless indifference in terminating Relator Willson.

**WHEREFORE**, Relators Todd G. Willson and Peggy Lemley, on behalf of themselves and the United States Government, pray:

(i) that Relator Willson be reinstated (or receive front pay) and receive 2 times the amount of back pay, interest on the back pay, and compensation for any special damages

sustained as a result of the retaliatory action and any other relief available under 31 U.S.C. § 3730(h);

(ii) that Relator Willson receive punitive damages under Iowa law as a result of being terminated with malice and/or reckless indifference;

(iii) that Relator Willson recover all costs of this action, with interest, for his expenses related to this action;

(iv) that Relator Willson be awarded all reasonable attorneys' fees in bringing this action;

(v) that Relator Todd G. Willson be awarded prejudgment interest;

(vi) that a trial by jury be held on all issues so triable; and

(vii) that Relator Willson receive all relief to which he may be entitled at law or in equity.

## JURY DEMAND

**COME NOW** Relators Todd G. Willson and Peggy Lemley, on behalf of themselves and the United States Government and the State of Iowa, by and through their attorneys, and request a trial by jury.

Respectfully submitted,

GREFE & SIDNEY, P.L.C.

By: /s/ *Guy R. Cook*
Guy R. Cook, AT0001623
Adam D. Zenor, AT0009698
Holli M. Andresen, AT0011544

500 E. Court Ave., Ste. 200
Des Moines, IA 50309
Phone: 515/245-4300
Fax: 515/245-4452
gcook@grefesidney.com
azenor@grefesidney.com
handresen@grefesidney.com

ATTORNEYS FOR PLAINTIFF/RELATOR

TODD G. WILLSON

SHERINIAN & HASSO LAW FIRM

By: /s/ *Melissa C. Hasso*
   Melissa C. Hasso, AT0009833

   3737 Woodland Ave.
   Colony Park Building, Suite 630
   West Des Moines, IA 50266
   Phone: 515/224-2079
   Fax: 515/224-2321
   mhasso@sherinianlaw.com

ATTORNEY FOR PLAINTIFF/RELATOR
PEGGY LEMLEY

**Certificate of Service**

The undersigned certifies that the foregoing instrument was served upon the United States and the State of Iowa on the 17th day of May, 2016, pursuant to Federal Rule of Civil Procedure 4(i) and Iowa Rule of Civil Procedure 1.305.

/s/ *Adam D. Zenor*